IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JENNIFER STARKS BRAGGS,** | } |
| Plaintiff, | } |
| v. | } Case No.: 2:13-CV-2015-RDP |
| **CAROLYN W. COLVIN,** **COMMISSIONER OF SOCIAL SECURITY,** | } |
| Defendant. | } |

**MEMORANDUM OF DECISION**

Plaintiff Jennifer Starks Braggs brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Act, and Supplemental Security Income ("SSI") benefits under Title XVI of the Act. Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be reversed and remanded. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

**I.    Proceedings Below**

*A.    Procedural History*

Plaintiff filed applications for a period of disability, DIB, and SSI on June 27, 2008, alleging that she became disabled as of June 4, 2008.[1]  (Tr. 53).  After Plaintiff's applications were initially

---

[1] Plaintiff's date last insured for purposes of disability benefits was December 31, 2011. (Tr. 441). For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she was insured. 42 U.S.C. § 423(a)(1)(A) (2005).

denied, she then requested a hearing. (Tr. 54-59, 63-64). The hearing took place on February 24, 2010, before Administrative Law Judge Jill Lolley Vincent. (Tr. 23-50). In her decision dated May 3, 2010, the ALJ determined that Plaintiff had not been under a disability, as defined in the Act, at any time from June 4, 2008, through the date of the decision. (Tr. 17-18). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision was appealed to the United States District Court for the Northern District of Alabama. *Braggs v. Astrue*, Case No.: 2:11-cv-759-CLS (N.D. Ala. Jan. 6, 2012). The Honorable Lynwood Smith, in an opinion dated January 6, 2012, reversed the decision of the Commissioner and remanded the case for further proceedings, finding that the decision of the ALJ was not based on substantial evidence.[2] (*See id.* at 7).

After gathering additional medical records, the ALJ held another hearing on June 13, 2012. (Tr. 462-93). In a decision dated June 29, 2012, the ALJ again found Plaintiff not to be under a disability at any time from June 4, 2008, through the date of the decision. (Tr. 455). When the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner. This appeal followed. (Doc. 1).

   B.   Facts

At the time of her June 2012 hearing, Plaintiff was 42 years old. (Tr. 466-67). She completed the eleventh grade and never received a GED. (Tr. 467). She last worked in 2006 at DSW. (*Id.*). Plaintiff stated she left that job because of health problems, including carpal tunnel in both wrists, arthritis in both knees, plantar fasciitis, Type II diabetes, degenerative joint disease in her right shoulder, and acid reflux. (*Id.*). She also reports suffering from migraine headaches and sleep apnea. (Tr. 480, 482-83). She has reported that at times her hands become weak and numb,

---

[2] Specifically, Judge Smith found that the Residual Functional Capacity ("RFC") crafted by the ALJ was not supported by the medical evidence of record. *Id.* at 7.

her right arm hurts if she tries to vacuum, she cannot walk very far, has trouble with her memory, and gets sleepy and feels weak when her diabetes is not under control. (Tr. 468-76). Her feet sometimes swell, burn, and are generally tender. (Tr. 480). She also suffers from depression and anxiety. (Tr. 477). She has had auditory and visual hallucinations. (*Id.*). In her own estimation, Plaintiff can stand and walk no more than ten minutes at a time, lift no more than five pounds and sit no more than ten minutes at a time. (Tr. 478).

In 2006 Plaintiff was using splints for relief of symptoms from bilateral carpal tunnel syndrome. (Tr. 279-80). November 2006 and June 2008 nerve conduction studies confirmed moderate bilateral carpal tunnel syndrome. (Tr. 300-01). The splints helped more in her left hand than her right, and her shoulder was noted to be tender with degenerative joint disease and positive impingement. (Tr. 328-29, 338). She underwent a shoulder arthroscopy, debridement, and decompression. (Tr. 336).

Plaintiff's treating physician for most of the relevant time period was Dr. Jeremy Allen. (Tr. 485). Plaintiff was seen by Dr. Allen throughout 2007 for uncontrolled diabetes, knee pain, and migraine headaches. (Tr. 207, 209, 212, 213, 267). His records reflect that Plaintiff has complained of right shoulder pain since at least April 2008. (Tr. 202, 262, 307). Neurology Clinic records reflect that nortiptyline helped with Plaintiff's chronic migraine headaches, as did taking Pamelor at the onset of a headache. (Tr. 264). Plaintiff is also followed for obstructive sleep apnea. (Tr. 302-04, 402). She had been using a C-PAP machine since October 2007 which improved her sleep and increased her energy level. (Tr. 263).

In September 2008, a consultative mental examiner found Plaintiff to have no psychological limitations other than she "simply does not exert herself." (Tr. 350-51). A physical consultative examination, also conducted in September 2008, noted Plaintiff suffered from a host of physical

3

ailments, that she was depressed, and that she needed help with bathing, dressing, grooming, and preparing food. (Tr. 355). The consultative physician observed Plaintiff guarding her right arm, but making good effort throughout the exam. (*Id.*). The examiner also noted limitations in her range of motion in a variety of joints (Tr. 356-57) and diagnosed Plaintiff with bilateral carpal tunnel syndrome, osteoarthritis, and sleep apnea. (Tr. 357). Plaintiff was also found to be limited to standing or walking for less than two hours in an eight-hour workday due to osteoarthritis in the knees, unlimited in sitting, and requiring an assistive device for uneven terrain and long distances. (*Id.*). Further, she was limited to lifting and carrying no more than ten pounds frequently and ten pounds occasionally due to carpal tunnel syndrome. (Tr. 358).

A March 2009 examination noted Plaintiff complained of bilateral knee pain, shoulder pain, and wrist pain. (Tr. 385). In May 2009, Dr. Allen completed a Clinical Assessment of Pain form in which he opined that Plaintiff suffered from pain to such an extent as to be distracting to performance of work, that physical activity would greatly increase this pain, and that she had some limitations from her medications. (Tr. 390). At the same time, Dr. Allen completed a Physical Capacities Evaluation in which he shared his belief that Plaintiff could lift no more than ten pounds occasionally to five pounds frequently, could not stand and walk for any length of time, could sit for six hours in an eight-hour workday, had limitations on pushing and pulling movements, climbing, fine and gross manipulation, bending, stooping, reaching, operating motor vehicles and working around hazardous machinery, and would miss approximately four days of work per month due to her impairments. (Tr. 391).

Follow up visits in 2009 noted that Plaintiff still had plantar fasciitis, bilateral knee pain, and uncontrolled diabetes, as well as anxiety and continued shoulder pain. (Tr. 408). An MRI of her right shoulder found mild degenerative changes in the AC joint and a partial rotator cuff tear. (Tr.

4

421). A June 2010 emergency room record reflects Plaintiff was seen for a migraine headache which had began seven days previously. (Tr. 715).

A second psychological consultative examination was conducted in September 2010. (Tr. 593). William B. Beidleman, Ph.D., determined Plaintiff suffered from dythemic disorder and generalized anxiety disorder, and assigned a Global Assessment of Functioning ("GAF") Score of 58. (Tr. 594). He also believed Plaintiff had difficulties coping with ordinary work pressures. (Tr. 594). The same month, a second physical consultative examination was performed. (Tr. 596). Again, it was determined Plaintiff had a limited range of motion in her right shoulder and both hips (Tr. 598), although she retained bilateral hand dexterity. (Tr. 599). Plaintiff was diagnosed with carpal tunnel syndrome, chronic low back pain, shoulder pain, and knee pain. (*Id.*). The examining physician opined Plaintiff could stand or walk for two to four hours in an eight-hour workday with frequent breaks; sit for six to eight hours without frequent breaks; and did not believe manipulative or environmental limitations were warranted. (*Id.*).

In 2010 and 2011, Plaintiff was followed by Dr. Ramy Toma for uncontrolled diabetes, GERD, depression, carpal tunnel syndrome, migraine headaches and osteoarthritis. (Tr. 670-72). An August 2010 emergency room visit for leg pain diagnosed Plaintiff with peripheral neuropathy. (Tr. 705-06). In September 2010, Plaintiff complained of bilateral foot pain she described as a sharp burning pain made worse by walking. (Tr. 650). A nerve conduction study of her lower legs was basically normal. (Tr. 647-48). A November 2010 visit record reflects Plaintiff had pain in her knee, uncontrolled diabetes, and anxiety. (Tr. 641-42). Dr. Toma also concluded Plaintiff suffered from depression, sleep apnea, carpal tunnel syndrome, migraine headaches, and osteoarthritis in her lumbar spine and shoulders. (Tr. 627, 679). Plaintiff complained of constant parasthesias in her right wrist, from which she obtained little relief from medications. (Tr. 631).

Plaintiff was seen by Theodis Bugg, Jr., M.D., for carpal tunnel syndrome and knee pain. (Tr. 633, 675). He found only minimal degenerative changes in both knees, formed a diagnosis of patellofemoral syndrome, and prescribed knee strengthening exercises and wrist braces. (Tr. 633, 675-76).

Plaintiff returned to Dr. Allen in 2011. In a Physical Capacities Evaluation, he opined that Plaintiff could lift ten pounds occasionally to five pounds frequently; sit for three to four hours in an eight-hour workday; stand or walk no more than one hour in an eight-hour workday; and had multiple postural and manipulative limitations, including only occasional grasping, handling and fine manipulation with her hands. (Tr. 681). He believed Plaintiff would miss more than four days of work per month due to her impairments. (*Id.*). His opinions about her limitations from pain remained consistent with his prior assessment. (Tr. 682).

With this background, at the April 2012 hearing, the ALJ asked the vocational expert ("VE") to assume that Plaintiff had the residual functional capacity ("RFC") to stand or walk six hours in an eight-hour day; sit six hours in an eight-hour day, lift and carry twenty pounds occasionally, ten pounds frequently, occasionally climb ramps and stairs, occasionally reach overhead and occasionally bend, stoop, kneel, crouch and crawl. (Tr. 487). The VE testified that with such limitations, Plaintiff could not perform her past work, but other jobs which fit those limitations such as cloth folder, sorter I, and marker all existed in the national economy in significant numbers. (Tr. 488). When asked to assume someone of Plaintiff's age, education and work experience, with limitations against commercial driving and more than frequent handling, the cloth folder job would no longer be available, but a laundry sorter job would be. (Tr. 489). Further limitations of standing or walking for only two hours in a workday and lifting only ten pounds occasionally (and less weight frequently) would eliminate the prior identified jobs, but others such as information clerk, telephone

order clerk, and document preparer still existed. (Tr. 490). Finally, if limitations such as those described by Dr. Allen were considered appropriate, no unskilled jobs would exist in the national economy that such an individual could perform. (Tr. 491). Additionally, a limitation of only occasional feeling and handling would make such a person unemployable. (*Id.*).

    C.    *ALJ Decision*

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. City of New York*, 476 U.S. 467, 470 (1986). "[A]n individual shall be considered to be disabled for purposes of [determining eligibility for benefits] if [s]he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If a claimant is engaged in substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(I). The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 443).

At step two, the Commissioner must determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's

7

ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. §§ 404.1521(a); 416.921(a).  A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. §§ 404.1523, 416.923.  The ALJ found that Plaintiff had the following severe impairments: "obesity, bilateral carpal tunnel syndrome, diabetes mellitus II, bilateral knee pain, minimal degenerative changes in bilateral knees, plantar fasciitis, status post arthroscopy on right shoulder, mild degenerative changes in the right shoulder, generalized anxiety disorder, major depressive disorder, and history of migraine headaches."  (Tr. 443).

If a claimant has a severe impairment, at step three the Commissioner must then determine whether the claimant's impairment meets the duration requirement and whether it is equivalent to any one of the listed impairments in 20 C.F.R. Part 404, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), (d)-(e), 416.920(a)(4)(iii), (d)-(e).  If a claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any Listing. (Tr. 20).

If the impairment does not meet or equal the criteria of any Listing, a claimant must prove that her impairment prevents her from performing her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (f),  416.920(a)(4)(iv), (f).  At step four, the Commissioner "will first compare [the Commission's] assessment of [the claimant's] residual functional capacity with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. §§ 404.1560(b), 416.960(b).  The ALJ found that Plaintiff has the RFC to

> stand/walk six hours in an eight-hour day; sit six hours in eight-hour workday and lift and carry twenty pounds occasionally and ten pounds frequently. She can

8

occasionally climb ramps and stairs; never climb a ladder, rope or scaffold; and occasionally reach overhead with bilateral upper extremities. She must avoid concentrated exposure to extreme heat, extreme cold, wetness humidity, dusts, fumes, odors, gases. Poor ventilation and vibration. She must avoid all exposure to hazardous machinery and unprotected heights. She can occasionally bend, stoop, kneel, crouch and crawl; never perform commercial driving; and frequently handle and finger with the bilateral upper extremities. She can understand, remember and carry out simple instructions; can maintain attention and concentration for at least two hour time periods in order to complete an[] eight-hour workday; can maintain occasional interaction with the general-public and can adapt to changes in the workplace that are introduced gradually and infrequently.

(Tr. 446-47). Considering this RFC, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (Tr. 454).

At the fifth and final step of the analysis, if a claimant establishes that she is unable to perform her past relevant work, the Commissioner must show that the claimant -- in light of her RFC, age, education, and work experience -- is capable of performing other work that exists in substantial numbers in the national economy. 20 C.F.R. §§ 404.1560(c)(1); 416.960(c)(1). If the claimant is not capable of performing such other work, the Commissioner must find she is disabled. 20 C.F.R. §§ 404.1520(g); 416.920(g).

At the hearing, the ALJ asked the VE whether jobs existed in the national economy for someone of Plaintiff's age, education, work experience, and RFC. (Tr. 487-92). Based on the VE's testimony, the ALJ determined jobs exist in the national economy that Plaintiff could perform. (Tr. 454).

**II.     Plaintiff's Argument for Remand or Reversal**

Plaintiff seeks reversal or remand of the ALJ's decision based on two arguments: (1) the ALJ failed to give great weight to the opinion of her treating physician, and (2) the ALJ failed to properly consider her credibility. (Doc. #16 at 8).

9

**III.     Standard of Review**

Judicial review of disability claims under the Act is limited to analyzing whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. §§ 405(g), 1631(c)(3); *Wilson v. Barnhart*, 284 F.3d 1219, 1529 (11th Cir. 2002). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). Legal standards are reviewed de novo. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007). "[N]o . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

**IV.     Discussion**

    **A.     Did the ALJ Err in Failing to Give Great Weight to the Opinion of Plaintiff's Treating Physician?**

Eleventh Circuit case law is well settled: an ALJ must give the opinion of a treating physician "substantial weight" unless "good cause" is shown to the contrary. *See, e.g.*, *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (stating the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion). A non-examining doctor's opinion that contradicts an examining doctor's medical report is accorded little weight and cannot, standing alone, constitute substantial evidence. *Edwards v. Sullivan*, 937 F.2d 580, 584

(11th Cir. 1991). In assessing medical evidence, an ALJ is required to state with particularity the weight he or she gave the different medical opinions and the reasons therefore. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision, so long as the ALJ's decision" enables the district court "to conclude that the ALJ considered [Plaintiff's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quotations and alterations omitted).

This appeal involves a review of the ALJ's second determination of Plaintiff's benefits claim. Clearly, if substantial weight is given to Plaintiff's treating physicians in this action, she must be found disabled. The ALJ, in this a second review, has found there is "good cause" not to give substantial weight to the treating physicians' opinions. Once again, the court disagrees.

Dr. Allen, Plaintiff's treating physician, stated on May 8, 2009, that Plaintiff was limited as follows: lifting and carrying ten pounds occasionally to five pounds frequently; sitting for six hours in an eight-hour workday; reducing her walking and standing; only rarely reaching, bending, stooping, and performing fine manipulation; and only occasionally pushing, pulling, and performing gross manipulation; and operating motor vehicles. (Tr. 391). Additionally, Dr. Allen observed that Plaintiff's pain would be increased by physical activity such that it would cause distraction from or complete abandonment of tasks. (Tr. 390). In September 2008, Malaika Hakima, M.D., performed a consultative physical examination and concluded that Plaintiff could stand or walk less than two hours in an eight-hour day due to osteoarthritis in her knees. (Tr. 357). Approximately two years later, a second physical consultative examiner, Laurie Douglas, M.D., determined Plaintiff could stand or walk two to four hours in an eight-hour workday. (Tr. 599). When asked for his opinion again in October 2011, Dr. Allen found Plaintiff could sit for three to four hours a day and stand or walk one hour a day. (Tr. 681).

11

Despite all this evidence to the contrary, the ALJ determined Plaintiff could stand/walk for six hours in an eight-hour workday, based on the opinion of Stuart Stephenson, M.D., the non-examining, non-consulting State Agency doctor who reviewed Plaintiff's medical records and completed forms on September 26, 2008. (Tr. 373-80, 449). In support of this determination, the ALJ considered that a consultative psychological examiner, in September 2008, noted Plaintiff's gait, posture, balance and coordination were normal. (Tr. 449). The ALJ explained that although this doctor's "area of specialty is not that of a physical nature his observations indication that [Plaintiff] has overstated the severity of her symptoms." (Tr. 449). The ALJ gave no explanation as to why a *psychologist*, who had not examined Plaintiff's *knees and feet*, was able to opine that Plaintiff is able to stand or walk for six hours in an eight-hour day. Nor was there a sufficient explanation provided by the ALJ concerning why the opinions of Drs. Hakima, Allen, and Douglas were conclusory, not supported by treatment records, or against the weight of the evidence. *See Phillips*, 357 F.3d at 1240-41. Rather, the opinions of the three physicians -- who actually examined Plaintiff -- all support their independent determination that Plaintiff has some degree of limitation as to the number of hours in an eight-hour workday that she can spend standing or walking.

Similarly, the ALJ relied on a statement from Cooper Green Emergency Department in August 2011, when Plaintiff was seen for gastritis and hyperglycemia, that Plaintiff could return to work or school. (Tr. 450). The ALJ concludes that "[c]ertainly, [Plaintiff] would not receive such a release if she could only stand and walk zero to one hour in an eight-hour day." (*Id.*). But (again), as with the ALJ's erroneous assumption that a consultative psychological examiner would consider Plaintiff's allegations of knee and foot pain, an ER visit because she was "light headed, blood sugar keeps dropping" (Tr. 746) provides no evidence concerning whether Plaintiff can stand for one or

six or eight hours in an eight-hour workday, or whether ER doctors even considered that different limitation.[3]

Turning to Dr. Allen's October 2011 opinion that Plaintiff's ability to stand and walk was limited to one hour in an eight-hour workday, the ALJ found this conclusion is not supported by the medical evidence because "[c]onsulting physician Dr. Stuart X. Stephenson[4] opined that [Plaintiff] could stand and walk six hours in an eight-hour day in September 2008," and consulting physician Dr. Douglas found she was limited to two to four hours a day, which "is considerably higher than Dr. Allen's Evaluations." (Tr. 450). Finally, the ALJ relies on the statement of a non-examining, non-consulting State Agency physician, Dr. Robert Heilpern, that Plaintiff can stand and walk six hours in an eight-hour workday. (*Id.*). A review of this evidence demonstrates that no doctor who actually performed a physical examination on Plaintiff believed she could stand or walk for six hours in an eight-hour day. For this and other reasons, the court does not hesitate in concluding that the ALJ has failed to show the "good cause" necessary to reject these medical opinions. *See, e.g.*, *Winschel*, 631 F.3d at 1179 (requiring the ALJ to "state with particularity the weight given to different medical opinions and the reasons therefor" (citing *Sharfarz*, 825 F.2d at 279)).

Moving to Plaintiff's ability to use her hands to perform work, the ALJ found that Plaintiff suffers from bilateral carpal tunnel syndrome. Despite the opinions of Drs. Allen and Hakima that Plaintiff was limited to lifting and carrying no more than ten pounds occasionally, and despite Dr. Allen's limitations on Plaintiff's ability to frequently use fine and gross manipulation, the ALJ found Plaintiff could frequently handle and finger with both hands, as well as lift and carry twenty pounds

---

[3] The court notes that just two months later, emergency room records reflect, "The patient does not feel well for the past couple of days which is generalized fatigue and weakness activated by arthralgias in her legs and her plantar fasciitis. Due to her pain she had increased difficulty walking with increased dyspnea with exertion." (Tr. 684).

[4] Dr. Stephenson was the State Agency doctor who completed a Physical Residual Functional Capacity Assessment form in September 2008. (Tr. 373-80).

occasionally and ten pounds frequently. (Tr. 446). After considering the medical records detailing testing on Plaintiff's hands, her complaints of parathesis and the prescription of splints, the ALJ determined Drs. Allen and Hakima's opinions were not supported by substantial evidence because when Plaintiff was seen at the hospital emergency room on August 13 and August 15, 2011, for light-headedness, stomach pain, reflux, headaches, and diabetes, she did not complain about her hands. (Tr. 451, 746-58). Again, such evidence does not provide the good cause needed to reject a treating physician's opinion. A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). When considered in light of the medical records as a whole, Plaintiff's failure to complain about her wrists when she was seen for a different complaint (*i.e.*, what was determined to be hyperglycemia) does not support a finding that she is capable of frequent hand usage. Multiple treating doctors, as detailed above, have prescribed medicines and wrist splints to ease Plaintiff's carpal tunnel induced wrist pain. The ALJ's findings concerning Plaintiff's ability to use her hands frequently is simply against the great weight of the evidence.

For the foregoing reasons, the court finds the RFC findings of the ALJ, which were based at least in large part on her rejection of Plaintiff's treating physicians' opinions, are not supported by substantial evidence.

### B. Did the ALJ Properly Assessed Plaintiff's Credibility?

SSR 96–7p provides the following guidance to ALJs tasked with assessing the credibility of claimants' statements:

> Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the

14

> relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements . . . .
>
> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.
>
> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her medically determinable impairments were not credible to the extent they were inconsistent with the ALJ's RFC findings. (Tr. 447). The ALJ first noted that Plaintiff alleged her pain had been an eight on a zero-to-ten pain scale since 2000, although Plaintiff worked for at least two of those years. (*Id.*). The ALJ also observed that Plaintiff "has not been compliant with post-operative instructions and the objective medical evidence demonstrates her conditions are not as severe as alleged." (Tr. 449). However, the ALJ failed to point to any objective medical evidence used to make that determination. (*Id.*). The failure to comply postoperatively after a shoulder arthroscopy, standing alone, does not provide substantial evidence that Plaintiff's conditions are not as severe as alleged.

The ALJ also determined that, because Plaintiff had surgery on her shoulder but not for carpal tunnel syndrome, this "implies that [Plaintiff] was not suffering as much from the carpal tunnel syndrome." (Tr. 450). No evidence in the record suggests that any doctor has recommended surgery on Plaintiff's wrists, or that surgery would cure Plaintiff's complaints of pain, tingling, and numbness in her wrists.[5] Rather, treatment records reflect that Plaintiff complained of "persistent carpal tunnel in right wrist, constant parasthesias worse at night. She wears her wrist splint, has seen Dr Buggs (sic), minimal relief with Mobic, gabapentin." (Tr. 690).

Simply stated, Plaintiff's testimony is not at odds with her medical records or treatment. Plaintiff testified, "at times, my hands get weak and numb, and I have a burning sensation in them." (Tr. 468). She testified on cloudy and rainy days, her hands tend to hurt. (*Id.*). She testified she has problems gripping, pushing, pulling, and untwisting caps. (Tr. 478). Nothing in this testimony is contradicted by Plaintiff's medical records reflecting she was directed to wear bilateral braces at all times.

The ALJ's articulated reasons for discounting Plaintiff's credibility are not supported by substantial evidence. The VE's testimony demonstrated that if the evidence from each examining physician and Plaintiff were believed, no substantial gainful employment exists in the national economy which Plaintiff can perform. The ALJ's reasons for opting to ignore this wealth of evidence are not supported by the substantial evidence in the record.

---

[5] Under similar facts, where the ALJ cited to no medical evidence of record to support the clinical opinion that because no surgery was recommended, Plaintiff's symptoms were not as bad as alleged, another court noted, "[t]he ALJ, therefore, "succumbed to the [forbidden] temptation to play doctor and make [his] own independent medical findings." *Bennett v. Barnhart*, 288 F.Supp.2d 1246, 1251 (N.D.Ala. 2003) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (alterations in original)).

## V. Conclusion

The court concludes that the ALJ's determination that Plaintiff was not disabled at any time through the date of the decision is not supported by substantial evidence. The Commissioner's final decision is due to be reversed and remanded. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this   12th   day of March, 2015.

                                              **R. DAVID PROCTOR**
                                              UNITED STATES DISTRICT JUDGE